UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHEILA D.,

           Plaintiff,

v.                                             3:20-CV-1343 (ML)

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC    JUSTIN M. GOLDSTEIN, ESQ.
   Counsel for the Plaintiff
6000 North Bailey Avenue - Suite 1A
Amherst, New York 14226

SOCIAL SECURITY ADMINISTRATION         NATASHA OELTJEN, ESQ.
   Counsel for the Defendant                     Special Assistant U.S. Attorney
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

MIROSLAV LOVRIC, United States Magistrate Judge

## **ORDER**

       Currently pending before the Court in this action, in which Plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1]  Oral

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18.  Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

1

argument was heard in connection with those motions on August 25, 2022, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination was supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by Plaintiff in this appeal.

After due deliberation, and based upon the Court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is

**ORDERED** as follows:

1) Plaintiff's motion for judgment on the pleadings (Dkt. No. 18) is DENIED.

2) Defendant's motion for judgment on the pleadings (Dkt. No. 22) is GRANTED.

3) The Commissioner's decision denying Plaintiff Social Security benefits is AFFIRMED.

4) Plaintiff's Complaint (Dkt. No. 1) is DISMISSED.

5) The Clerk of Court is respectfully directed to enter judgment, based upon this determination, DISMISSING Plaintiff's Complaint in its entirety and closing this case.

Dated: September 1, 2022
      Binghamton, New York

*Miroslav Lovric*
Miroslav Lovric
United States Magistrate Judge
Northern District of New York

```
UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK
_____
D

vs.                                3:20-CV-1343

COMMISSIONER OF SOCIAL SECURITY




_____




              DECISION AND ORDER


              August 25, 2022


    The HONORABLE MIROSLAV LOVRIC,
      DISTRICT MAGISTRATE JUDGE




          A P P E A R A N C E S


For Plaintiff:    JUSTIN GOLDSTEIN, ESQ.


For Defendant:    NATASHA OELTJEN, ESQ.


             Ruth I. Lynch, RPR, RMR, NYSRCR
            Official United States Court Reporter
               Binghamton, New York  13901
```

1          THE COURT:  The Court is going to begin with its
2  decision by setting forth the following:
3          First, plaintiff has commenced this proceeding
4  pursuant to 42 U.S. Code Sections 405(g) and 1383(c) to
5  challenge the adverse determination by the Commissioner of
6  Social Security finding that she was not disabled at the
7  relevant times and therefore ineligible for the benefits
8  that she sought.
9          By way of background, the Court notes as follows:
10         Plaintiff was born in 1954.  She is currently
11 approximately 67 years of age.  She was approximately 61
12 years of age at the alleged onset of her disability on
13 June 1 of 2016.  Plaintiff stands approximately 5 feet 8
14 inches in height and weighs approximately 210 pounds.
15 Plaintiff has a college degree.  Plaintiff's work history
16 includes positions as an editor, researcher, and library
17 curator.
18         Procedurally, the Court states as follows:
19         Plaintiff applied for Title II benefits on May 25
20 of 2017, alleging an onset date of June 1, 2016.
21         In support of her claim for disability benefits,
22 plaintiff claims disability based on hearing loss, tinnitus,
23 depression, and sarcoidosis.
24         Administrative Law Judge Kenneth Theurer conducted
25 a hearing on August 19, 2019, to address plaintiff's

application for benefits.  ALJ Theurer issued an unfavorable decision on September 10, 2019.  That became a final determination of the agency on October 8th, 2020, when the Social Security Administration Appeals Council denied plaintiff's application for review.

This action was commenced on October 29 of 2020, and it is therefore timely.

In his decision, ALJ Theurer applied the familiar five-step test for determining disability.

At step one, he concluded that plaintiff had not engaged in substantial gainful activity since June 1, 2016, the alleged onset date.

At step two, the ALJ concluded that plaintiff suffers from severe impairments that impose more than minor limitations on her ability to perform basic work activities, specifically hearing loss and tinnitus.  The ALJ also recognized the following ten nonsevere impairments: One, respiratory impairments including sarcoidosis; two, a baker's cyst; three, vertigo; four, hypothyroidism; five, gastroesophageal reflux disease; six, macular degeneration; seven, left shoulder impairment; eight, hypertension; nine, history of gallbladder removal; and, ten, depression.

At step three, ALJ Theurer concluded that plaintiff's conditions do not meet or medically equal any of the listed presumptively disabling conditions set forth in

the commissioner's guidelines, and the ALJ focused on listing 2.10 that deals with special senses and speech.

The ALJ next determined that plaintiff retains the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The ALJ noted plaintiff should not work in a noise environment greater than moderate as defined in the Dictionary of Occupational Titles but retains the ability to hear and understand simple and some more complex oral instructions and to communicate simple and complex information. Plaintiff should avoid work at unprotected heights or in conjunction with dangerous machinery, and plaintiff should avoid concentrated exposure to smoke, dust, and respiratory irritants.

At step four, the ALJ concluded that plaintiff could perform her past relevant work as a publications editor. Nevertheless, the ALJ proceeded to step five.

At step five, the ALJ concluded that in the alternative, based on the testimony of the vocational expert, plaintiff could also perform the requirements of representative occupations such as a hospital food service worker and laundry worker II. As a result, the ALJ concluded that plaintiff has not been under a disability as defined by the Social Security Act from June 1, 2016 through the date of his decision.

1            Now, as the parties know, the Court's functional
2    role in this case is limited and extremely deferential.  I
3    must determine whether correct legal principles were applied
4    and whether the determination is supported by substantial
5    evidence, defined as such relevant evidence as a reasonable
6    mind would find sufficient to support a conclusion.  As the
7    Second Circuit has noted in Brault V. Social Security
8    Administration Commissioner, found at 683 F.3rd 443, a 2012
9    Second Circuit case, therein the Court indicated that
10   standard is demanding, more so than the clearly erroneous
11   standard.  The Second Circuit noted in Brault that once
12   there is a finding of fact, that fact can be rejected only
13   if a reasonable fact-finder would have to conclude
14   otherwise.
15           Now, in this case the plaintiff raises two
16   contentions on appeal.  First, plaintiff argues that the ALJ
17   did not properly evaluate the opinion evidence of, A,
18   Dr. Elizabeth cotton; B, Dr. Gilbert Jenouri; and, C,
19   Dr. Ellen Zaslaw.
20           Second, the plaintiff argues that the ALJ's RFC is
21   not supported by substantial evidence.
22           The Court begins its analysis by indicating as
23   follows:  For the reasons set forth in defendant's brief, I
24   find that the ALJ's decision was supported by substantial
25   evidence.

1    First, the Court notes that the ALJ was not
2    required to explicitly state the fact that Dr. Cotton was
3    plaintiff's treating physician.  Pursuant to the regulations
4    the ALJ was not required to provide specific consideration
5    or deference to an opinion simply because, because it is
6    from a treating source.  See 20 C.F.R. Section 404.1520c(a);
7    see also 82 Fed. Reg. 5844-01, that's a 2017 West Law 168819
8    case and found at page 5853, stating that, enacting the new
9    regulations, the agency was explicitly not retaining the
10   treating source rule.
11       Instead, an ALJ must articulate in his or her
12   determination as to how persuasive he or she finds all of
13   the medical opinions and explain how he or she considered
14   the supportability and consistency of these opinions.  The
15   ALJ also may, but is not required to, explain how he or she
16   considered the other relevant factors related to the
17   source's relationship with the claimant, including the
18   length of any treatment relationship, the frequency of
19   examinations by the source, and the purpose and extent of
20   the treatment's relationship, whether the source had an
21   examining relationship with the claimant, whether the source
22   specializes in an area of care, and any other factors that
23   are relevant to the persuasiveness of that source's opinion.
24   See Jody L. versus Commissioner of Social Security,
25   20-CV-1434, that's a 2022 West Law case found at 2237801, at

1  page 4.  And that's a Northern District of New York
2  June 21st, 2022 decision authored by Magistrate Judge David
3  Peebles.  And in there Judge Peebles citing 20 C.F.R.
4  Section 404.1520c.
5           The Court notes in a form entitled Medical Source
6  Statement that is dated July 17, 2019, Dr. Elizabeth Cotton
7  indicated that she had been treating plaintiff two to four
8  times per year since 2013 for plaintiff's hearing loss,
9  osteoarthritis, left shoulder, and pain in her left knee,
10 for which her prognosis was poor for hearing and fair for
11 knee and shoulders.  See docket number 14 at 834, transcript
12 page 830.  Dr. Cotton opined, in part, that plaintiff can
13 sit for only one hour at one time; can stand for only 20
14 minutes at one time; can sit and stand less than 2 hours in
15 an 8-hour workday; would require the ability to shift
16 positions at will; would require unscheduled breaks; would
17 require, with prolonged sitting, that her legs be elevated
18 to hip level approximately 50 percent of the time during an
19 8-hour day; can occasionally lift 20 to 50 pounds; can
20 occasionally twist, stoop, and bend; can never crouch or
21 squat; can rarely climb ladders and stairs; and can
22 occasionally use her hands and fingers and rarely use her
23 arms.
24          Dr. Cotton further opined that plaintiff's
25 impairments are likely to produce good days and bad days

that will likely result in plaintiff's being absent from work about two days per month, and that plaintiff would rarely experience symptoms severe enough to interfere with her attention and concentration to perform even simple work tasks.  Dr. Cotton noted that any be job involving conversation, meetings, phone calls would be very difficult because of plaintiff's hearing impairments.  See docket number 14 at 834 to 836, transcript pages 830 to 832.

The ALJ found Dr. Cotton's opinion not persuasive, explaining that in his view the opinion was not consistent with the record because the record did not support the extent of the limitations identified and Dr. Cotton did not provide an explanation for those identified limitations.  See docket number 14 at 23, transcript page 19.

It is clear from the ALJ's decision that he applied the proper legal standard and specifically considered the factors of supportability and consistency as required.

As defendant highlighted with respect to plaintiff's shoulder, she underwent physical therapy and within two weeks noted only mild pain with no instability.  See docket number 14 at 670, transcript page 666.  She was discharged at the five -- after five visits over five weeks with a note that her left shoulder was feeling pretty good.  She had resumed all normal activities except heavy overhead

1 lifting.  See docket number 14 at 674, transcript page 670.
2 Plaintiff did not seek further treatment for her shoulder
3 after completing physical therapy.
4     With respect to plaintiff's knees, in April 2017
5 plaintiff injured her right knee after slipping on ice and
6 was referred to physical therapy.  See docket number 14 at
7 473, transcript page 469.  By May 17th of 2017, plaintiff's
8 physical therapy notes indicated that her knee was doing
9 really well, able to walk without pain, back to normal
10 activities.  See docket number 14 at 793 to 795, transcript
11 pages 789 to 791.  As a result, plaintiff was discharged
12 from physical therapy because no further therapy needed at
13 this point.  Patient doing much better.  And that's a
14 quotation from those records.  Again found at docket
15 number 14.
16     In May 2019 plaintiff described general left knee
17 pain aggravated by hiking and weight gain.  But the
18 examination during this visit showed a normal gait with no
19 swelling and a normal range of motion of the left knee.  See
20 docket number 14 at 686 to 688, transcript pages 682 to 684.
21 Plaintiff mentioned a baker's cyst on her left knee during a
22 June 2019 treatment visit, also found at docket 14, 683 to
23 685, transcript pages 69 to 681.  The treatment notes from
24 this June 2019 visit indicate that plaintiff had to do a lot
25 of walking with her job which exacerbated her symptoms, that

1   she was currently treating her knee with physical therapy,
2   and it was recommended that she continue with physical
3   therapy.
4         Upon examination in 2017 consultative examiner
5   Dr. Jenouri opined that plaintiff had minimal restrictions
6   as to walking or standing for long periods; bending, stair
7   climbing, lifting, and carrying.  Dr. Jenouri noted
8   plaintiff's knee -- plaintiff's knee flexion and extension
9   is zero to 130 degrees, limited by pain bilaterally.  Thus,
10  substantial evidence supports the ALJ's rejection of the
11  significant physical limitations opined by Dr. Cotton.
12        The Court notes although Dr. Cotton noted that
13  plaintiff's hearing limitations would make conversation,
14  meetings, and phone calls very difficult, the RFC is the
15  most, and the Court highlights most, that a claimant can do,
16  despite his or her impairments.  See 20 C.F.R. Section
17  404.1545(a)(1).  Merely being difficult does not mean that
18  plaintiff would be incapable of performing those tasks.
19        It is also noted plaintiff's daily activities
20  included shopping, cooking, cleaning, going out alone,
21  driving, using public transportation, and socializing, all
22  of which presumably involved prolonged sitting, standing,
23  and/or walking.  In addition, these daily activities
24  indicate that plaintiff was not limited by her hearing
25  impairment.

1        As a result, I find that substantial evidence
2   supports the ALJ's finding that Dr. Cotton's opinion was not
3   persuasive because it was not consistent with the record.
4        Secondly, the Court finds substantial evidence
5   supports the ALJ's finding that Dr. Jenouri's opinion was
6   persuasive.  In addition to the minimal physical
7   restrictions opined by Dr. Jenouri that I just previously
8   outlined, Dr. Jenouri opined that plaintiff was restricted
9   from activities requiring, quote, unquote, fine hearing
10  acuity.  See docket number 14 at 411, transcript page 407.
11       With respect to the minimal physical restrictions,
12  Dr. Jenouri observed that plaintiff was able to perform a
13  50 percent squat, walk on her heels and toes without
14  difficulty.  She had a full range of motion in her shoulders
15  and she had full strength in her upper and lower
16  extremities.
17       As defendants -- as defendant, excuse me, sets
18  forth, an opinion does not become stale merely because it
19  predates other evidence in the record.  A medical opinion
20  may be stale if it does not account for the claimant's
21  deteriorating condition.  See Carney V. Berryhill,
22  16-CV-0269, that's a 2017 West Law case, 2021529, at page 6.
23  And that's a Western District New York May 12, 2017 case.
24  For example, in considering whether a medical opinion is
25  stale, courts have frequently pointed to surgeries occurring

1   subsequent to the medical opinion as evidence of the
2   claimant's deteriorating condition.  See McGrady V. Saul,
3   18-CV-1187, that's a 2020 West Law case found at West Law
4   253483, at page 3, Western District New York May 19, 2020
5   case, and therein collecting cases.  Here, although
6   plaintiff injured her left knee and her shoulder after
7   Dr. Jenouri's opinion, based on the record it was reasonable
8   for the ALJ to conclude that those were acute injuries that
9   resolved quickly with conservative treatment.
10          For the reasons set forth in defendant's brief, I
11  conclude that the ALJ did not err in concluding that
12  plaintiff had no significant limitations, compared with
13  Dr. Jenouri's conclusion of minimal restrictions, as to
14  walking and standing long periods, bending, stair climbing,
15  lifting, and carrying.  Use of the term minimal restrictions
16  by Dr. Jenouri was consistent with the definition of a
17  nonsevere impairment.  Further, as set forth by the
18  defendant, the ALJ found that plaintiff could perform her
19  past relevant work which was sedentary.  Thus, even assuming
20  arguendo that the ALJ erred in concluding that plaintiff had
21  no significant limitations, which would result in a
22  different outcome at step five, it would not change the
23  conclusion that plaintiff is not disabled because she can
24  still perform her past relevant work, and thus plaintiff has
25  failed to show any prejudice.

```
 1              Third, substantial evidence supports the ALJ's
 2   conclusion regarding Dr. Zaslaw's note, and quote, for the
 3   purpose of establishing the claimant's hearing impairment
 4   did not significantly -- significantly limit the claimant
 5   from effectively communicating and having a treating
 6   relationship with Dr. Zaslaw, end quote.  Found at docket
 7   number 14 at 23, transcript page 19.  As defendants set
 8   forth, the ALJ was still permitted to consider Dr. Zaslaw's
 9   note as one more piece of evidence that plaintiff's hearing
10   loss did not prevent her from effectively communicating with
11   others.
12              Fourth, substantial evidence supports the RFC
13   assessment.  With respect to the portion of the RFC
14   assessment that plaintiff should not work in a noise
15   environment greater than moderate but retains the ability to
16   hear and understand simple and some more complex oral
17   instructions and information, the Court notes as follows:
18              As defendant outlined, when plaintiff was asked if
19   she could resume doing the amount of work she did in 2015,
20   if more work were available, plaintiff testified that she
21   potentially could but that her vertigo issue has been
22   slowing her down a lot.  But if it weren't for that
23   potentially she could go from one to the next.  See docket
24   number 14 at page-- at 53 to 55, transcript pages 57 to 59.
25              The Court also notes plaintiff's prior work in
```

1    2015 as a publication editor involved a noise environment
2    with a less than or equal to moderate noise level.  Thus, by
3    plaintiff's own testimony, she was capable of working within
4    the confines of this portion of the RFC assessment.
5             In addition, after getting new hearing aids in
6    2015, plaintiff reported in August 2017 that she had been
7    wearing the hearing aids for the last two years and had
8    noticed, quote, unquote, significant improvement.  See
9    docket number 14 at 415, transcript page 411.
10            Dr. Jenouri noticed some difficulties with
11   conversational speech and opined that plaintiff was
12   restricted from activities requiring fine hearing activity.
13   See docket number 14 at 409 to 411, transcript pages 405 to
14   407.  Plaintiff failed to establish why a restriction from
15   activities requiring fine hearing activity is inconsistent
16   with a limitation to moderate noise.
17            For these reasons and the reasons set forth in
18   defendant's brief, the record supports evidence such that a
19   reasonable mind might accept adequate supporting conclusion
20   that plaintiff could tolerate moderate noise and understand
21   simple and some more complex instructions.
22            Finally, I find that substantial evidence supports
23   the ALJ's assessment regarding the consistency of
24   plaintiff's testimony with the other evidence in the record
25   for the reasons stated in defendant's brief.

15

1           As a result, plaintiff's motion for judgment on
2   the pleadings is denied.  Defendant's motion for judgment on
3   the pleadings is granted.  Plaintiff's complaint is
4   dismissed.  And the Commissioner's decision denying
5   plaintiff benefits is hereby affirmed.
6           That constitutes the Court's decision in this
7   case.
8                         - - - - -
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25